UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 3:11-CR-115-TAV-HBG-1 ) |
| CHRISTOPHER SMITH, | ) ) |
| Defendant. | ) |

## **MEMORANDUM OPINION AND ORDER**

Defendant requests compassionate release under 18 U.S.C. § 3582(c)(1)(A) [Doc. 72]. Although he has not satisfied 3582(c)(1)(A)'s exhaustion requirement, the government's failure to respond to defendant's motion within the time prescribed by the local rules could be considered a waiver of the exhaustion issue. *See* E.D.TN. LR 7.1(a) & 7.2. Regardless, even if the Court could consider defendant's motion on the merits, it would **DENY** it because defendant has not presented extraordinary and compelling reasons warranting release.

A court generally lacks "the authority to change or modify [a sentence, once imposed,] unless such authority is expressly granted by statute." *United States v. Thompson*, 714 F.3d 946, 948 (6th Cir. 2013) (citing *United States v. Curry*, 606 F.3d 323, 326 (6th Cir. 2010)). The First Step Act of 2018 amended § 3582(c)(1)(A) to revise one such exception. First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, 5239 (2018). Prior to the First Step Act, a district court could grant relief under § 3582(c)(1)(A) only on a motion of the Director of the Bureau of Prisons. Now a court

may modify a defendant's sentence upon a motion by a defendant if the defendant has exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on defendant's behalf or after the lapse of thirty (30) days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier. § 3582(c)(1)(A). If the defendant surmounts this preliminary hurdle, the Court may grant a sentence reduction "after considering the factors set forth in section 3553(a) to the extent that they are applicable" if it finds:

> (i) extraordinary and compelling reasons warrant such a reduction; or
>
> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

*Id.*

The Court examines first whether defendant has satisfied § 3582(c)(1)(A)'s exhaustion requirement,[1] which is a mandatory prerequisite to consideration of a compassionate release request on the merits. *United States v. Alam*, No. 20-1298, 2020 WL 2845694, at *2–3 (6th Cir. June 2, 2020). Here, defendant states that he requested

---

[1] The Court uses "exhaustion requirement" throughout the opinion to refer to § 3582(c)(1)(A)'s instruction that a court may consider a motion by a defendant after the defendant has fully exhausted his administrative rights or after thirty (30) days have passed from the warden's receipt of a request to move on defendant's behalf for a sentence reduction, whichever is earlier.

2

compassionate release from the warden at his facility, FCI Elkton, on April 12, 2020, and that the warden had not responded at the time defendant filed his motion, which was entered on May 7, 2020 [Doc. 72 p. 3]. Thus, defendant has not "fully exhausted his administrative rights" because he did not receive a response from the warden and did not appeal it through the administrative remedy process [*Id.* at 3–5]. *See* 28 C.F.R. § 571.63 (describing inmate's ability to appeal denial of request by warden through Administrative Remedy Procedure and stating that only a denial by the General Counsel or the Director of the BOP constitutes "a final administrative decision"). Nor did defendant satisfy the exhaustion requirement by waiting thirty (30) days from submitting a compassionate release request to FCI Elkton's warden before filing the instant motion. *See Alam*, 2020 WL 2845694, at *3 ("Prisoners who seek compassionate release have the option to take their claim to federal court within 30 days, no matter the appeals available to them."). Thus, defendant has not crossed the threshold to consideration of his motion on the merits.

Moreover, the Court lacks the authority to waive the exhaustion requirement in defendant's case by recognizing a judge-made exception for the COVID-19 pandemic as defendant proposes [Doc. 72 p. 4]. Defendant asks the Court to find that the immediate danger of serious illness or death from COVID-19 infection excuses exhaustion under § 3582(c)(1)(A), apparently conceding that he has not satisfied the exhaustion requirement [*Id.* at 3–5]. "When 'properly invoked,'" however, "mandatory claim-processing rules 'must be enforced.'" *Alam*, 2020 WL 2845694, at *3 (quoting *Hamer v.*

3

*Neighborhood Hous. Servs. of Chi.*, 138 S. Ct. 13, 17 (2017)). Accordingly, such rules are not amenable to judge-made exceptions like the one defendant advocates. *Id.* (citing *Ross v. Blake*, 135 S. Ct. 1850, 1857 (2016)); *see also Bolze*, 2020 WL 2521273, at *4 ("While 'judge-made exhaustion doctrines . . . remain amendable to judge-made exceptions,' 'mandatory exhaustion statutes . . . establish mandatory exhaustion regimes, foreclosing judicial discretion.'" (quoting *Ross*, 135 S. Ct. at 1857)). Rather, the only exceptions to mandatory claim-processing rules are waiver and forfeiture. *Alam*, 2020 WL 2845694, at *3 (citing *United States v. Cotton*, 535 U.S. 625, 630 (2002)).

Indeed, because § 3582(c)(1)(A) is a non-jurisdictional provision, the government may waive enforcement of the exhaustion provision. Mandatory claim-processing rules are only mandatory "in the sense that a court must enforce the rule if a party 'properly raise[s]' it." *Fort Bend*, 139 S. Ct. at 1849 (quoting *Eberhart v. United States*, 546 U.S. 12, 19 (2005) (per curiam)). Here, the government failed to submit a timely response to defendant's motion, and the local rules generally permit the Court to consider failure to respond waiver of any opposition to the relief sought. *See* E.D.TN. LR 7.1(a) & 7.2.[2] Thus, the Court could find that one of the exceptions to enforcing a mandatory claim-processing rule applies: the government has waived any objection to defendant's motion on exhaustion grounds. *See Alam*, 2020 WL 2845694, at *3 (citing *Cotton*, 535 U.S. at

---

[2] The Court notes that Standing Order 19-04, which discusses compassionate release motions, only addresses the government's obligation to respond to a motion for compassionate release in the case of the Federal Defender Services' filing of a supplement to a compassionate release motion or notice that it will not file a supplemental motion. In that case, the United States Attorney's Office "shall respond to a motion filed by counsel or FDSET's notice within five days." SO-19-04 p. 2.

4

630). In such a case, the Court could consider defendant's merits argument. *Cf. id.* (finding no waiver where the government "timely objected to Alam's failure to exhaust at every available opportunity").

Yet, even if the Court could reach the merits of defendant's motion, it would deny the motion because defendant does not present extraordinary and compelling reasons for release. Complying with the mandate in 28 U.S.C. § 994(t), as authorized by § 994(a)(2)(C), the United States Sentencing Commission promulgated a general policy statement describing the circumstances that constitute "extraordinary and compelling reasons" for a sentence reduction under § 3582(c)(1)(A) and providing specific examples. USSG § 1B1.13. Section 1B1.13 of the Federal Sentencing Guidelines provides a three-factor test for analyzing whether a sentence reduction is proper: after considering the § 3553(a) factors as applicable, the court may reduce a defendant's sentence if it determines as relevant here that (1) "extraordinary and compelling reasons warrant the reduction"; (2) "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)"; and (3) "the reduction is consistent with this policy statement." USSG § 1B1.13. The application notes for §1B1.13 provide additional guidance for applying the first prong of §1 B1.13's three-part test, describing four categories of circumstances that could present "extraordinary and compelling reasons," including, as relevant here, a defendant's suffering from a medical condition that "substantially diminishes the ability of the defendant to provide self-care within the

5

environment of a correctional facility and from which he or she is not expected to recover." USSG § 1B1.13 cmt. n.1.

Because any sentence reduction must be consistent with applicable policy statements, § 3582(c)(1)(A)(ii), the fact that defendant's reasons do not fall into any of the potential categories of extraordinary and compelling circumstances under USSG § 1B1.13 and its application notes justifies denying defendant's motion. § 3582(c)(1)(A)(ii). And, while the Court rejects defendant's argument that § 1B1.13 no longer constrains the Court's consideration of a compassionate release motion [Doc. 72 p. 4–7],[3] defendant has not presented extraordinary and compelling reasons even if the Court could stray from the policy statement.

Defendant's first and principal argument is that COVID-19 poses a serious, possibly fatal, risk to him because he suffers from hypertension [Doc. 72 p. 13]. The COVID-19 pandemic does not fit into any of § 1B1.13's categories and thus does not provide a basis for a sentence reduction. The policy statement directs courts to consider individual reasons for compassionate release, not general threats to incarcerated persons, much less a disease that threatens the global population. *See* § 1B1.13 n.1; *see also United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of

---

[3] *See United States v. Nix*, No. 3:15-cr-36, at *7–16 (E.D. Tenn. June 29, 2020) (discussing the Court's rationale for continuing to apply the policy statement, including subdivision D's catchall provision as written, to compassionate release motions filed by defendants).

6

COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release").[4]

On the other hand, a defendant's medical condition could provide an extraordinary and compelling reason under § 1B1.13 n.1(A)(ii) if a defendant suffers from a chronic medical condition that the Centers for Disease Control has recognized as elevating the risk of becoming seriously ill from COVID-19. § 1B1.13 n.1(A)(ii); *see also* Groups at Higher Risk for Severe Illness, Centers for Disease Control, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html (last visited May 6, 2020) (hereinafter "Groups at Higher Risk"). A court could find that defendant's medical condition is one "from which he or she is not expected to recover," i.e. a chronic condition, and is one, heightened by risks posed by COVID-19, that "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility." § 1B1.13 n.1(A)(ii).

Defendant's medical condition does not meet this standard. Defendant, who is age forty-five (45) according to BOP records, points to hypertension alone in support of compassionate release. Yet, the CDC identifies only pulmonary hypertension, not primary or essential hypertension, as increasing the risk for severe COVID-19 infection,

---

[4] *See also United States v. Binraymond*, No. 2:19-cr-196, 2020 WL 2110577, at *2 (S.D. Ohio May 4, 2020) (finding that defendant "failed to show that COVID-19 pose[d] a particular risk to him sufficient to constitute extraordinary and compelling circumstances" where he did not contend he suffered from a terminal illness or serious medical condition and where he had "produced no evidence indicating that the jail is not equipped to adequately address problems arising due to COVID-19"), and *United States v. Mungarro*, No. 07-2276, 2020 WL 1933816, at *2 (E.D. Mich. Apr. 22, 2020) ("The court will not release Defendant simply because she *may* contract COVID-19, and if she does, *may* experience more pronounced symptoms.").

and defendant does not indicate the type of hypertension from which he suffers. *See* Groups at Higher Risk. The CDC has also indicated that "people whose only underlying medical condition is hypertension are not considered to be at higher risk for severe illness from COVID-19." Clinical Questions about COVID-19: Questions and Answers, CDC, https://www.cdc.gov/coronavirus/2019-ncov/hcp/faq.html#Patients-with-Persistent-or-Recurrent-Positive-Tests (last visited June 30, 2020). Moreover, defendant has not presented evidence of his condition, nor alleged that his hypertension is not being effectively managed by medication in line with CDC recommendations for reducing COVID-19-related risks. *Id.*; *see also* Frequently Asked Questions, CDC, https://www.cdc.gov/coronavirus/2019-ncov/faq.html (last visited June 24, 2020) (directing people with high blood pressure to take their medications as directed and work with their healthcare provider to ensure their blood pressure is as well controlled as possible), and People Who Are at Higher Risk for Severe Illness, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html (last visited June 24, 2020) (noting that people of all ages with underlying medical conditions, "particularly if not well controlled" are at higher risk).

And, while the high number of active infections at FCI Elkton remains concerning, the numbers have decreased significantly in recent weeks according to the BOP. As of June 10, 2020, the BOP was reporting 438 active infections among inmates and nine (9) inmate deaths, as well as seven (7) staff members with active infections and no staff deaths. *See United States v. Ryerson*, No. 3:09-cr-66-1, 2020 WL 3259530, at *1 (E.D.

8

Tenn. June 16, 2020). Now, the BOP reports 174 active infections among inmates and 834 recovered inmates, with two (2) active infections among staff, fifty-one (51) recovered staff members, and no change in the number of deaths. COVID-19 Cases, Federal Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited July 23, 2020). While these numbers suggest that defendant continues to face a high risk of infection, defendant has not shown that he faces a similarly high risk of life-threatening infection, which could represent an extraordinary and compelling reason for release. Thus, defendant has failed to establish that he suffers from a chronic medical condition whose danger to his health, in combination with a COVID-19 infection, rises to the level required under the policy statement, i.e. "substantially diminish[ing his ability] to provide self-care within the environment of a correctional facility." § 1B1.13 n.1(A); *see e.g.*, *United States v. Black*, No. 5:18-cr-646-1, 2020 WL 1930149, at *3 (N.D. Ohio Apr. 21, 2020) (finding defendant at FCI Elkton failed to establish right to compassionate release because he claimed he suffered from high blood pressure and diabetes but "offer[ed] no proof, such as medical records, that would substantiate this claim"), *United States v. Gamble*, No. 3:18-cr-22-4, 2020 WL 1955338, at *4–5 (D. Conn. Apr. 23, 2020) (finding no extraordinary or compelling reasons where defendant suffering from diabetes did not claim or provide evidence that his diabetes was not being and could not be controlled by medication, and where defendant had not demonstrated that BOP could not contain the spread of the virus at his facility or treat defendant if infected), and *United States v. Clark*, No. 3:13-cr-163-1, 2019 WL 1052020, at *3 (W.D.N.C. Mar. 5, 2019) (denying

9

motion for compassionate release because defendant did not provide medical records substantiating that she suffered from a serious physical or medical condition and because she failed to demonstrate her condition substantially diminished her ability to provide self-care).

Finally, even if the Court could recognize some combination of extraordinary and compelling reasons that fall outside those specified by the policy statement, which the text of the Guidelines does not currently authorize it to do, § 1B1.13 cmt. n.1(D), the reasons defendant cites are not extraordinary and compelling. While defendant claims to suffer from hypertension, the CDC has stated that people whose only underlying medical condition is hypertension are not considered to be at higher risk. Moreover, defendant does not offer proof of the condition or allege that medication is insufficient to control his symptoms. Additionally, defendant is only forty-five (45) years old and has a significant portion of his sentence left to serve, distinguishing his case from those where defendants were also at risk of infection due to their age and where defendants were set to be released in a few days or months. *Cf. United States v. Walls*, No. 92-80236, 2020 WL 1952979, at *1–2 (E.D. Mich. Apr. 23, 2020) (granting compassionate release under § 1B1.13 n.1(B) because defendant was seventy-eight (78) years old, had served over twenty-five (25) years in prison, and was suffering from "several serious health conditions, including Parkinson's, cardiovascular issues, and loss of ambulatory functions"), and *United States v. Thorson*, No. 5:16-cr-17, 2020 WL 1978385, at *1, 3 (W.D. Ky. Apr. 24, 2020) (granting unopposed motion for compassionate release where

10

facility was unable to treat defendant's rectal bleeding and defendant was set to be release to a halfway house in less than three (3) months). Ultimately, defendant fails to distinguish his circumstances from any number of similarly situated offenders, especially other relatively healthy individuals in FCI Elkton, and much of the general population.

Because defendant does not present reasons for release that qualify as extraordinary and compelling under § 3582(c)(1)(A)(i), the Court does not need to consider whether "the defendant is . . . a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)" or whether "the reduction is [otherwise] consistent with this policy statement." USSG § 1B1.13. Defendant's motion for compassionate release [Doc. 72] is **DENIED**.

IT IS SO ORDERED.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE